UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**RICHARD F. GLENN,**             CASE NO.:

    **Plaintiff,**

v.

**THOMAS J. VILSACK, in his official
capacity as SECRETARY,
UNITED STATES DEPARTMENT
OF AGRICULTURE,**

    **Defendant.**
_____/

## COMPLAINT

Plaintiff, RICHARD F. GLENN, hereby sues Defendant, THOMAS J. VILSACK, in his official capacity as SECRETARY, UNITED STATES DEPARTMENT OF AGRICULTURE, and alleges:

## JURISDICTION

1. This is an action brought under 15 U.S.C. §1691 *et seq.* (Equal Credit Opportunity Act – "ECOA"). Jurisdiction of this court is invoked pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 15 U.S.C. §1691e(f) (ECOA jurisdiction of courts). Attorney's fees and costs are also sought under 15 U.S.C. §1691e(d) and 28 U.S.C. §2412.

2. This is an action involving claims which are, individually, in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and interest.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, RICHARD F. GLENN, has been a resident of the State of Florida. Plaintiff is a member of a protected class because he entered into or attempted to enter into a credit transaction with Defendant, UNITED STATES DEPARTMENT OF AGRICULTURE ("USDA") and was subject to discrimination based on his race (black), age (over 40), and color (dark-skinned/black).

4. Defendant, THOMAS J. VILSACK, is sued in his official capacity as SECRETARY of the UNITED STATES DEPARTMENT OF AGRICULTURE (USDA), which is organized and existing under the laws of the United States and doing business under the laws of the United States and the State of Florida. At all times pertinent to this action, Defendant USDA has managed, serviced, and provided loans within its USDA conducted Farm Service Agency Loan Programs and operated as a Lender for purposes of the Equal Credit Opportunity Act.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6. On or about July 28, 2016, Plaintiff, a black male, submitted an application to the United States Department of Agriculture's Farm Service Agency officials in Madison County, Florida for the purpose of securing funds under USDA's Direct Farm Operating Loan ("FOL") program.

7. The FOL provides a gateway to funding for agricultural production by financing the cost of operating a farm. The mechanism by which individuals secure funding is to apply locally through a Farm Service Agency ("FSA") and work with Farm Loan Officers and Farm Loan Managers for technical assistance in completing the loan application.

8. As a program requirement, it is the duty and responsibility of the Farm Loan Officers and Farm Loan Managers to assist applicants in gaining a full understanding of the loan process and to ensure the applications and associated forms are properly completed. Pursuant to Section 12204 of the Agricultural Act of 2014, Defendant's Farm Service Agency officials are required to document each and every visit to a Farm Service Agency and/or requests for service, technical assistance or any other benefit offered by USDA. Specifically, the receipt must document the date, place, and nature of the request from the applicant and any action taken at a Farm Service Agency office.

9. On or about December 3, 2014, Plaintiff visited the Farm Service Agency Office in Madison County, Madison, Florida to obtain information about the FSA's FOL program to start and operate a farm in Jefferson County, Florida. Patricia Sorensen, a loan officer in training, assisted Plaintiff. However, as an employee still in training, Patricia Sorensen was unable or chose not to provide to the level of technical assistance and advice Plaintiff sought due to her limited knowledge at the time.

10. In or about February of 2015, Plaintiff and his wife visited the Farm Service Agency Office in Jefferson County, Monticello, Florida to obtain information about the FSA's FOL program. The Agency Officials at the Monticello Agency Office referred Plaintiff to the Farm Service Agency Office in Madison, Florida.

11. On or about February 9, 2015, Plaintiff visited the Farm Service Agency Office in Madison County, Madison, Florida as directed by the Jefferson County Agency Office. Plaintiff and his wife again sought to obtain a Farm Loan Program Direct Loan Application and technical assistance in preparing the application. Administrative Assistant Amanda Hammers provided Plaintiff and his wife with limited information about the FOL program and suggested that Plaintiff

speak with the Justin Tueton, the Director of Loan Applications for the FOL program, Justin Tueton.

12.   On or about March 17, 2015, Plaintiff visited the Farm Service Agency Office in Madison County, Florida to speak with Justin Tueton as directed by Ms. Hammers. At the time Plaintiff and his wife met with Mr. Tueton, the application was not fully completed as there were questions requiring clarification and further technical assistance. Mr. Tueton then addressed and answered Plaintiff and his wife's questions and explained how to complete the application. Plaintiff and his wife proceeded to complete the application under Mr. Tueton's guidance. After completing the application, Plaintiff and his wife submitted the completed application to Mr. Tueton for review.

13.   Upon review of Plaintiff's application, Mr. Tueton's demeanor shifted entirely. After reviewing Plaintiff's application, Mr. Tueton ripped the application up into checker-sized squares and placed the remnants into the trash can. Mr. Tueton then instructed Plaintiff and his wife that they had completed the wrong application. Mr. Tueton then gave Plaintiff a new application and instructed him to complete the new application and return a completed version to the office. However, Mr. Tueton informed Plaintiff that he would be leaving the Madison County Office and as a result Plaintiff would need to find someone else to assist

him. In fact, Mr. Tueton referred Plaintiff and his wife to the USDA's Institute of Food and Agricultural Services ("IFAS") Office on West Washington Street in Monticello, Florida (Jefferson County) and suggested they speak with Jed Dillaird.

14. Acting on Mr. Tueton's recommendation, Plaintiff and his wife visited the IFAS Office again and met with Jed Dillaird. During the meeting, Mr. Dillaird agreed to visit Plaintiff's site to collect soil samples, check the fertility of the land for planting crops and grazing cattle, and assist Plaintiff in selecting livestock. Mr. Dillaird told Plaintiff that he would contact him the following week to set a date for his visit. However, Mr. Dillaird never called Plaintiff, nor did he ever visit the property.

15. On or about October 13, 2015, Plaintiff filed a Program Discrimination Complaint with the USDA's Office of the Assistant Secretary for Civil Rights. In Plaintiff's complaint, he explained the discriminatory treatment Mr. Tueton displayed towards Plaintiff on the basis of his race, age, and color. Plaintiff detailed the incident when Mr. Tueton ripped Plaintiff's application to shreds by hand.

16. On or about October 31, 2015, Plaintiff mailed a letter to Rick Dantzler, the FSA State Executive Director. In the letter, Plaintiff explained the discriminatory treatment from the Florida FSA Offices he had visited in his

6

attempt to obtain a loan. Additionally, Plaintiff detailed the mincing of his loan application by Mr. Tueton and Mr. Dillaird's failure to follow through on his promise to visit and assist Plaintiff. Further, Plaintiff explained that the entire process of attempting to obtain an FOL loan appeared to be a wild goose chase without an agency official that was willing to assist Plaintiff. Additionally, Plaintiff sent copies of his Letter to Mr. Dantzler to Senator Bill Nelson, Senator Marco Rubio, and Representative Gwen Graham.

17. On December 10, 2015, Mr. Dantzler sent a response to Plaintiff's letter. Mr. Dantzler informed Plaintiff that he had directed the Farm Loan Manager in Plaintiff's area to work with the Farm Loan Officer in regard to Plaintiff's loan. Additionally, Mr. Dantzler gave Plaintiff his personal assurance that Plaintiff's loan application would receive the same consideration given to every other loan applicant. Further, Mr. Dantzler instructed Plaintiff that if he had been treated in a discriminatory manner that he should file a complaint with the USDA.

18. On or about July 28, 2016, Plaintiff and his wife once again visited the Farm Service Agency Office in Madison County, Madison, Florida to request technical assistance in completing their loan application. Administrative Assistant Amanda Hammers was the only employee in the office at the time of Plaintiff's visit. Plaintiff gave his loan application to Ms. Hammers, who reviewed the

application while Plaintiff and his wife were present. Ms. Hammers informed Plaintiff that information was missing from the application, which was necessary to process the loan application, but never explained what was missing. Yet, Ms. Hammers accepted the application and Plaintiff was provided a copy of Receipt for Service ("RFS") #1341730, documenting that Plaintiff had submitted a loan application.

19.    Thereafter, without Plaintiff's authorization or knowledge, Ms. Sorenson revised the amount of Plaintiff's loan request and withdrew the application under the guise that Plaintiff failed to provide additional information as requested.

20.    On July 28, 2016, the FSA sent Plaintiff a Notice of Incomplete Application which informed Plaintiff that the items missing from his loan application must be submitted by August 17, 2016.

21.    On or about July 29, 2016, Plaintiff again visited the Madison County FSA for assistance with his loan application. Once again, only Administrative Assistant Amanda Hammers was present to assist Plaintiff. No application information or technical assistance was furnished to Plaintiff. However, Plaintiff was provided a copy of RFS #1341715 which documented that a Farm Loan Programs Direct Loan application was received from him that day.

22. On August 2, 2016, Plaintiff went to the Madison County FSA to request clarification on the information requested in the Notice of Incomplete Application. Administrative Assistant Amanda Hammers met with Plaintiff but failed to provide the technical assistance Plaintiff sought. RFS #1341744 documented that the purpose of Plaintiff's visit was to request clarification on the information requested in the Notice of Incomplete Application. However, Ms. Hammers failed to clarify the information requested in the Incomplete Letter. As a result, Plaintiff was unable to determine what additional information he needed to submit to move forward with the loan application.

23. On August 2, 2016, following his visit to the Madison County FSA office, Plaintiff filed a Complaint of Program Discrimination with the USDA Office of the Assistant Secretary for Civil Rights. Plaintiff explained that the FSA Agency Officials in the Madison County Office had discriminated against him on the basis of his age, race, and color. Plaintiff further explained that this discriminatory treatment resulted in Plaintiff being denied the technical assistance with his loan application that he requested.

24. Plaintiff contends he provided all documents required to be submitted with the application. Mr. Dantzler, who stated he would speak with the Madison

County Office so they would proceed with processing and approving the requested loan funds, did not follow through on his promise.

25. By way of example, each and every time Plaintiff visited a Farm Service Agency office to obtain technical assistance with the application, Plaintiff was told there were additional items required. After completing those items, the application was still never completed to the loan officer's satisfaction.

26. On August 23, 2016, Archie Crawford, Chief of Program Complaints Division sent notice to Plaintiff that his complaint had been accepted for processing.

27. On August 30, 2016, the FSA sent Plaintiff a Notice of Application Withdrawal/Pending Withdrawal. Plaintiff declined to respond because he saw little use in once again visiting the Madison County FSA Office, which had systemically denied all of his prior attempts to submit a loan application.

28. On December 12, 2018, the USDA issued its Final Agency Decision on Plaintiff's complaint. The USDA claimed that the record did not support a finding that Plaintiff had been discriminated against on the bases of race, age, or color.

29. On February 28, 2019, Plaintiff sent a letter to Secretary of Agriculture Sonny Perdue rebutting the Final Agency Decision issued on December 12, 2018.

30. On March 25, 2019, Shawn McGruder, Executive Director of the Center for Civil Rights Enforcement issued a response to Plaintiff's February 28, 2019 letter. Mr. McGruder informed Plaintiff that the regulations do not afford an opportunity to appeal his Final Agency Decision because the discrimination Plaintiff faced was based on his race, color, and age. However, Mr. McGruder did inform Plaintiff that his administrative complaint was covered by the Equal Credit Opportunity Act ("ECOA"). Mr. McGruder further explained that ECOA makes it unlawful for lenders, including the USDA, to discriminate against individuals in any aspect of a credit transaction on the bases of, including but not limited to, race, color, and age.

31. Defendant's agents denied, delayed, and frustrated Plaintiff's loan application by failing to provide Plaintiff adequate technical assistance in the completion of his Farm Service Agency Operating Loan based on his race (black), color (black), and age (74). The USDA further compounded this problem by failing to appropriately investigate Plaintiff's complaint of discrimination.

32. On December 16, 2018, the USDA issued Plaintiff its Final Agency Action, permitting Plaintiff to bring this instant action to resolve this matter.

33. Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## RACE DISCRIMINATION

34. Paragraphs 1 through 33 are re-alleged and incorporated herein by reference.

35. The Defendant's conduct as outlined above qualifies as discrimination against Plaintiff with respect to credit transactions on the basis of race in violation of the Equal Credit Opportunity Act, 15 U.S.C. §1691(a) (1).

36. The Defendant's policies and practices alleged here in constitute a pattern or practice of resistance to the full enjoyment rights granted by the Equal Credit Opportunity Act.

37. Plaintiff has been the victim of discrimination on the basis of Plaintiff's race in that Plaintiff was treated differently than similarly situated applicants of Defendant who are not black and has been subject to poor treatment on the basis, at least in part, of Plaintiff's race.

38. Defendant is liable for the differential treatment towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

39. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

40. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

41. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's rights under the ECOA. The events set forth herein lead, at least in part, to adverse actions against Plaintiff.

42. Defendant's conduct and omissions constitutes intentional and willful discrimination based upon race in violation of the statutes referenced above.

43. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life

and other non-pecuniary losses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief and punitive relief.

## COUNT II
## COLOR DISCRIMINATION

44. Paragraphs 1 through 33 are re-alleged and incorporated herein by reference.

45. The Defendant's conduct as outlined above qualifies as discrimination against Plaintiff with respect to credit transactions on the basis of color in violation of the Equal Credit Opportunity Act, 15 U.S.C. §1691(a) (1).

46. The Defendant's policies and practices alleged here in constitute a pattern or practice of resistance to the full enjoyment rights granted by the Equal Credit Opportunity Act.

47. Plaintiff has been the victim of discrimination on the basis of Plaintiff's color in that Plaintiff was treated differently than similarly situated applicants of Defendant who are not black and has been subject to poor treatment on the basis, at least in part, of Plaintiff's color.

48. Defendant is liable for the differential treatment towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions

and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

49. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

50. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a color-based nature and in violation of the laws set forth herein.

51. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's rights under the ECOA. The events set forth herein lead, at least in part, to adverse actions against Plaintiff.

52. Defendant's conduct and omissions constitutes intentional and willful discrimination based upon color in violation of the statutes referenced above.

53. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief and punitive relief.

## COUNT III
## AGE DISCRIMINATION

54. Paragraphs 1 through 33 are re-alleged and incorporated herein by reference.

55. The Defendant's conduct as outlined above qualifies as discrimination against Plaintiff with respect to credit transactions on the basis of age in violation of the Equal Credit Opportunity Act, 15 U.S.C. §1691.

56. The Defendant's policies and practices alleged here in constitute a pattern or practice of resistance to the full enjoyment rights granted by the Equal Credit Opportunity Act.

57. Plaintiff has been the victim of discrimination on the basis of Plaintiff's age in that Plaintiff was treated differently than similarly situated applicants of Defendant who are younger and has been subject to poor treatment on the basis, at least in part, of Plaintiff's age.

58. Defendant is liable for the differential treatment towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

59. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

60. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of an age-based nature and in violation of the laws set forth herein.

61. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's rights under the ECOA. The events set forth herein lead, at least in part, to adverse actions against Plaintiff.

62. Defendant's conduct and omissions constitutes intentional and willful discrimination based upon age in violation of the statutes referenced above.

63. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief and punitive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 18th day of March 2021.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801

ATTORNEYS FOR PLAINTIFF