IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**RICHARD F. GLENN,**

    **Plaintiff,**                                Case No. 4:21-cv-00137-AW-MAF

**v.**

**THOMAS J. VILSACK, in his official
capacity as SECRETARY,
UNITED STATES DEPARTMENT
OF AGRICULTURE,**

    **Defendant.**
_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(a) and Northern District of Florida Local Rule 56.1(D), Defendant Thomas J. Vilsack, in his official capacity as Secretary, United States Department of Agriculture ("USDA" or "Defendant") files this Reply to Plaintiff Richard Glenn ("Mr. Glenn" or "Plaintiff")'s Response in Opposition to Defendant's Motion for Summary Judgment. [ECF No. 39].

## Introduction

Although Plaintiff attempts to manufacture a dispute of material fact by citing over 1,500 pages of evidence for the Court to consider, even a cursory review of the record reveals that Plaintiff has no credible evidence to support his claims of

discrimination. In fact, it is useful to address and dispense with Plaintiff's red herrings right away.

This case is *not* a reconsideration of the *Pigford* decision, its progeny, or the USDA's compliance with the *Pigford* settlement agreement. This case is *not* about whether the USDA's alleged failure to send an Notice of Incomplete Application in violation of 7 C.F.R. § 764.52.[1] This case is *not* about whether Plaintiff's loan application could have been submitted orally under 12 C.F.R. § 202.2(f). This case is *not* about whether John Collins, Joe Bellamy, or Audrey White were denied farm loans. The *only* dispute at issue for this Court to consider is whether Mr. Glenn was subject to illegal discrimination under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f, ("ECOA") when he applied for a farm loan with the USDA Farm Service Agency ("FSA"). For this simple question, the answer is clear, as admitted in Plaintiff's own Response—he was not subject to illegal discrimination because his application was never completed. [*See* ECF No. 39, p. 26]. Accordingly, Defendant is entitled to final summary judgment in its favor.

---

[1] Plaintiff's claim that Defendant sent the Notice of Incomplete Application "well over a year" after Mr. Glenn applied for a loan simply ignores the numerous interactions, documented by extensive record evidence cited at ECF No. 28 ¶¶ 12-36, the parties had between those two dates.

## SUPPLEMENTAL STATEMENT OF UNDISPUTED MATERIAL FACTS

A close review of Plaintiff's "Statement of Disputed Facts," easily reveals that the *vast* majority of alleged "disputed facts" are not material for summary judgment and/or are not actually disputed and/or are not supported by record evidence. Indeed, key record evidence is cited by both parties. Defendant relies on its Statement of Material Facts in ECF No. 28[2] and offers the following additional facts to clarify and correct facts offered by Plaintiff that are unsupported by independent record evidence.

*First*, Ms. Mazie Glenn was not a loan applicant and was not denied a loan. [ECF No. 39, p. 10, (citing ECF No. 22-20, ¶ 3)]. Her affidavit clearly states that only Mr. Glenn's name was on the property and that she "would also have [her] name put on it." *Id.* This is in direct contrast to her deposition testimony in which she confirms they do not share finances and she is not on the deed to the farm. [ECF No. 33-4, pp. 26:3-15; 145:14-16]. Additionally, Ms. Glenn's affidavit contains conclusory and self-serving testimony, all of which must be disregarded. *See Poitevint v. United Recovery Sys. L.P.*, 899 F. Supp. 2d 1230, 1237 (N.D. Fla. 2012)

---

[2] Plaintiff's arguments about summary judgment evidence are misplaced. *See Smith v. Marcus & Millichap, Inc.,* 991 F.3d 1145, 1156 at n.5 (11th Cir. 2021) ("Nevertheless, evidence does not have to be authenticated or otherwise presented in an admissible form to be considered at the summary judgment stage, as long as the evidence could ultimately be presented in an admissible form [at trial].") (citation and quotations omitted).

(striking portion of affidavit that was "purely speculative and not supported by the evidence").[3]

*Second*, Plaintiff claims that Defendant should have offered programs such as the "Direct Farm Ownership Down Payment loan," which "is the only loan program specifically for historically underserved and women farmers and beginning farmers." That is simply untrue—that program would have funded only down payments to procure a farm, which is not what Mr. Glenn sought to accomplish.

*Third*, in the final section of his opposition brief, Plaintiff states:

> In addition to everything mentioned above, Donnell Gwinn, a member of the FSA state committee, confirmed that Plaintiff should have obtained a loan. Furthermore, he testified in no uncertain terms that "Justin Teuton is racist" and personally witnessed Mr. Teuton treating white individuals better than non-whites.
>
> [ECF No. 39, p. 27]

Yes, Mr. Gwinn said that he believed that Justin Tueton was a racist; however, he also said that this was merely his "gut feeling" and "[Mr. Tueton] never said anything wrong." [ECF No. 33-10, p. 52:10-52:22]. The rest of Plaintiff's argument on this point is pure speculation. Mr. Gwinn did not "confirm that Plaintiff should have obtained a loan." [*Id.* p 46:7-10]. Instead, he testified that he "never saw" Mr.

---

[3] Defendant emphasizes that Ms. Glenn is not a party to the lawsuit. Further, her affidavit raises red flags and potentially ethical concerns—the only affidavit was filed not by the Plaintiff himself, but by someone who has financial incentive, yet no associated costs, to proceed with this lawsuit.

Glenn's loan application, was not aware if it was complete or not, and does not know the guidelines to follow for lending. [*Id.* pp. 49:4-50:9]. Mr. Gwinn did not "personally witness" anything—to the contrary, he testified that Mr. Tueton's interactions with white/black people were "always outside of the room for me, you know." [*Id.* 53:1-12].

In sum, Plaintiff cannot proffer sufficient evidence to defeat summary judgment.

## **ARGUMENT**

As an initial matter, Defendant notes that Plaintiff relies on an inapposite and outdated standard in attempting to defeat summary judgment. Plaintiff's contention that he can prove his case via disparate impact and/or disparate treatment analysis seemingly ignores the framework established in *Taylor v. Farm Credit of North Florida, ACA*, No. 4:20-cv-59-AW-MJ, 2021 WL 5148022, at *3 (N.D. Fla. Oct. 6, 2021). In this Reply, Defendant presumes that Plaintiff intended to establish his claims via circumstantial evidence, and possibly statistical data, either as an independent basis or as "contribut[ing] to the mosaic." *See Taylor*, 2021 WL 5148022, at *5. Regardless, Plaintiff cannot succeed under either theory.

**I.    FSA Program Technicians Intaking Loan Applications is Entirely Discretionary and Non-Discriminatory.**

To support his claim for discrimination, Plaintiff argues that Ms. Hammers, a "Program Technician for FSA" was either unqualified and/or should not have been

interfacing with the public about loan applications.  Plaintiff's subjective opinion on how the FSA should operate has no legal basis or relevance to Mr. Glenn's complaints.  Further, Plaintiff's position cannot stand when faced with the default Program Technician position description, which lists one of the "primary duties" as: "[r]eviews loan application forms and related documents, ensuring that all materials are complete, legal, and in compliance with processing procedures and regulations."[4]

It is entirely unclear how Plaintiff's position on staffing decisions and division of labor at the FSA offices could remotely support a claim of discrimination under the facts at issue.  Indeed, initial intake of applications is within Ms. Hammer's job description.  She was not assessing Plaintiff's "loan worthiness," but instead determining whether Mr. Glenn's application was complete.[5]  Regardless, if the complaint is that Ms. Hammers failed to adequately provide "[p]rofessional services only a loan officer can provide," this was not articulated before Plaintiff's Response and new claims cannot properly be raised for the first time in response to dispositive motions.  *See Thomas v. DeJoy*, Case No. 5:19-cv-549, 2021 WL 4992892, at * 12, n.13 (N.D. Fla. July 19, 2021) ("[T]he operative complaint does not contain this

---

[4] Farm Service Agency, *County Office Classification, Employment, and Pay Administration*, p. 342, https://www.fsa.usda.gov/Internet/FSA_File/27-pm.pdf [p. 342].

[5] Further, it is unclear how Plaintiff's position conforms with his later assertion that "Defendant was supposed to tell Plaintiff what to do in the loan application process[.]" [ECF No. 39, p. 26].

claim and '[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment.'") (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

Plaintiff also claims that, "by having a policy in place where a front desk employee is a primary interface between minority loan seekers, minorities such as Plaintiff are at a disadvantage in an area such as Madison County." [ECF No. 39, p. 18]. On balance, it is entirely unclear how having a "gatekeeper" can be interpreted as discriminatory and having a "disparate impact on new applicants; and given that most of the farmers in Madison County were white, blacks would be at a disadvantage when trying to catch up."[6]  *Id.* at p. 17.   By Plaintiff's definition, any administrative intake or screening function in lending, including reviewing applications for completeness, is inherently discriminatory.  This argument defies common sense.  Defendant also notes that it did not have a "policy" of a gatekeeper "withdrawing" applications.  Ms. Hammer's job description, as stated, was to ensure that all materials were complete, legal, and in compliance with processing procedures and regulations.  [*See* n.4, *supra*].  Mr. Glenn's application was withdrawn because it was not complete—he failed to submit the requested

---

[6] If the alternative is, as Plaintiff may be suggesting, for the FSA to eliminate the Program Technician position, then the Farm Loan Officers' caseload would likely skyrocket, leading to additional wait times in providing loan services for all farmers.

information, as admitted in Plaintiff's Response. [*See* ECF No. 39, p. 26]. As such, Plaintiff's prima facie case of discrimination must fail.

## II.     Plaintiff's "Running Record" Arguments are Entirely Misplaced.

Plaintiff argues that FSA's use of a "running record" was a discriminatory policy that somehow harmed Plaintiff in consideration of his loan application. Creating a running record, however, was not a "discretionary policy." As the record evidence shows, it was a neutral policy that was used to document interactions, similar to how receipts for service are handled. [ECF No. 27-21; ECF No. 27-31]. Regardless of whether this action was proper, it has marginal relevance to the actual claim at issue in this case—whether the FSA discriminated against Mr. Glenn because of his race, age, and color.

Plaintiff also complains that "loan officers such as Mr. Tueton relied upon this Running Record." [ECF No. 39 p. 15]. Objectively, Mr. Tueton was not involved in the 2016 decision about Mr. Glenn's loan applications since Mr. Teuton had long relocated to serve as Farm Loan Chief in Gainesville, Florida. [ECF No. 28, p. 5, ¶ 10]. In any event, what Plaintiff seems to take issue with is that in an affidavit prepared for an internal USDA investigation, Mr. Tueton "copied and pasted the entire running record in response to another question, asking if he had additional information. Then he swore to all of those facts under penalties of perjury." [ECF No. 39, p. 15 (internal citations omitted)]. It is entirely unclear how

Mr. Tueton providing "additional information" during the investigative process could somehow be interpreted as discriminatory. If anything, the opposite is true. Plaintiff's argument here is confusing, at best.

### III. The Continuing Violation Doctrine Does Not Apply.

Plaintiff next attempts to argue that the continuing violation doctrine saves his time-barred claim about the alleged ripping incident. As an initial matter, Defendant reiterates that in its summary judgment briefing, it accepted as true that "Mr. Tueton ripped up Plaintiff's loan application in front of Mr. and Mrs. Glenn." [ECF No. 28, p. 5, ¶ 8]. Defendant *then* proceeded to analyze the numerous independent reasons why Mr. Glenn's discrimination claims still must fail on the merits.

Regardless, it is entirely unclear whether, in the Eleventh Circuit, the continuing violation doctrine can be applied to ECOA claims. Irrespective of this uncertainty, the cases that Plaintiff cites to in support are distinguishable. Indeed, in *Davis*, the court even specifically "caution[ed] the parties that this ruling is subject to reconsideration as the record is developed." *Davis v. General Motors Acceptance Corp.*, 406 F. Supp. 2d 698, 703 (N.D. Miss. 2005). Further, both of Plaintiff's cited cases were decided before ECOA's statute of limitations was extended to five years in 2010. 15 U.S.C. § 1691e(f) (2011).[7]

---

[7] Plaintiff's statement that "it was not until March 25, 2019, when Plaintiff was advised of the 5-year limitations period" implies Defendant had some duty or

Other cases decided since the ECOA statute of limitations was amended hold the opposite view. In making this assessment, courts have held that the proper inquiry to determine the continuing violation doctrine's applicability to ECOA claims is to examine whether the facts alleged in the complaint are more similar to a hostile work environment case (in which the doctrine can apply) or are more akin to discrete discriminatory acts (in which it cannot). *See Ward v. Wells Fargo Bank, N.A.*, 89 A.3d 115, 125-26 (D.D.C. 2014); *Federer v. Midland Mortg. Co.*, Case No., No. 1:12–CV–2492–TWT, 2012 WL 5880916, at *3-*6 (N.D. Ga. Nov. 21, 2012). A quick review of the Complaint and Plaintiff's specific actions in response to this alleged ripping incident—including sending numerous letters to elected officials and state FSA Director Dantzler to complain about this incident—weigh heavily in favor of treating this ripping incident as a one-time occurrence, rather than any amalgamation of events, and thus it is barred by the statute of limitations.

Additionally, the Eleventh Circuit has considered in a separate, albeit closely related, context whether ECOA claims accrued before the statute of limitations were extended or could be revived by a subsequent amendment. The Eleventh Circuit found that the ECOA claims were not revived, suggesting a narrow interpretation of the law in this area. *See Canon v. Secretary, U.S. Dept. of Agriculture*, 649 Fed.

---

obligation to notify Plaintiff about his legal position. [ECF No. 39, p. 23]. There is no legal authority or support for this proposition.

Appx. 892, 896 (11th Cir. 2016). Regardless, this Court need not wade into these undecided areas of the law. Defendant's Motion for Summary Judgment, for the purposes of dispositive motion practice only, assumed that this incident occurred, and accepts that this fact, even if time-barred, could quite possibly be separately introduced to support a circumstantial inference of discrimination. Even assuming that all of this is true, this fact does not provide sufficient evidence of discrimination one way or another to meet the threshold articulated in *Taylor*.

**IV. The Uncontroverted Evidence Shows that Plaintiff Did Dot Complete his Loan Application, Barring Any Substantive Claim of Discrimination.**

Plaintiff attempts to create issues of material fact where there are none. Indeed, he can cite no evidence, beyond his wife's self-serving affidavit and one version of a document that has various unidentified check marks on it, to support his claim that he completed his loan application. Indeed, Plaintiff confirms as much by stating, "Thus, instead of assisting Plaintiff to complete the application, its front desk person (Ms. Hammers, poisoned by her own 'Running Record', with the support of Defendant's management, Mr. Teuton) simply kept denying that the application was appropriate. Thus, it was never truly considered by Defendant's loan officers for any of its many loans." [ECF No. 39, p. 26]. The fact that Plaintiff's loan application was never "considered by Defendant's loan officers" is the crux of this case—the

required documentation was never submitted, and as such, the USDA had a non-discriminatory reason for withdrawing Plaintiff's application.[8] [ECF No. 27-25].

Plaintiff cites various cases to support his contention that this Court should view his application as complete. *See e.g.*, *Errico v. Pac. Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1042-43, (N.D. Cal. 2010); *Moffitt v. Bank of Am., N.A.*, Case No. 1:09–cv–977–WTL–JMS, 2009 WL 5217147, at *3 (S.D. Ind. Dec. 29, 2009). These cases, however, are inherently inapplicable, because they were decided at the motion to dismiss stage, where the court is required to accept a plaintiff's allegation as true. That is not the standard for summary judgment. *See Taylor*, 2021 WL 5148022, at *1 ("But the Taylors bear the burden of proof on their claims and must 'go beyond the pleadings' to 'designate specific facts showing that there is a genuine issue for trial.'"). This Court must assess the record evidence to determine whether Mr. Glenn made a sufficient showing on an essential element of his discrimination claim. Defendant respectfully submits that he has not.[9]

**V.    Plaintiff's Reliance on Statistics Fails.**

---

[8] This does not overlook that active discouragement of applying for credit can be a viable theory of ECOA discrimination. The extensive summary judgment record in this case, cited in detail in ECF No. 28, clearly evidences that the USDA attempted to assist Mr. Glenn at every turn.

[9] Separately, there is no onus on Defendant to demonstrate that its "credit evaluation system" is nondiscriminatory. [ECF No. 39, p. 21]. Once again, Plaintiff's application was not complete.

Finally, Plaintiff's statistics simply do not match up with the underlying data.[10]  At best, Plaintiff's analytics are confusing and worst, inaccurate.  Plaintiff claims that "[t]he chart below tells this story," yet then fails to cite any record evidence in support of his summary "evidence."  [ECF No. 39, p. 19].  Defendant and this Court are not required to comb through the voluminous record to find what data Plaintiff is citing.  *See* Fed. R. Civ. P. 56(c)(1)(A); N.D. Fla. Loc. R. 56.1(F) ("Each memorandum must include pinpoint citations to the record evidence supporting each factual assertion.").

Plaintiff then attempts to rely on inflammatory statements as a last-ditch effort to survive summary judgment.  Plaintiff states, "[w]hen virtually every withdrawn application of a black individual was of a person 40 or over, it is clear there is at least a jury issue regarding Plaintiff' claims that he was as well."  [ECF No. 39, p. 20].  Contextualized, this statement makes perfect sense.  The record evidence demonstrates that "of the nine black applicants[11] [for direct loan assistance in FY 2016], their average age was 53.4."  [ECF No. 27-45, p. 14].  Accordingly, given

---

[10] Plaintiff's claim that Defendant never provided Plaintiff the underlying data regarding the "45 individual applicants" is false. [ECF No. 39, p. 12]. Defendant produced this chart to Plaintiff under two separate Bates numbers, two different times during discovery, as communicated to Plaintiff. Plaintiff's choice not to contact these individuals, despite having their full names and birthdates, was his own.

[11] Further, a data sample of nine individuals is arguably too small to draw any statistically significant conclusion.

that higher average age, it is logical that the subcategory of black individuals whose applications were withdrawn would be over 40 years old. Indeed—the data confirms exactly that and the difference between 53.4 and 52.2 years of age is not statistically significant by any measure. *Id.* (five withdrawn black applicants had an average age of 52.2). Defendant also notes that Plaintiff relies here on the very evidence he seeks to exclude. [*Compare* ECF No. 39, pp. 9-10 with p. 11]. Plaintiff cannot have it both ways. In sum, Plaintiff's questionable analysis of the statistical evidence is not sufficient to establish an essential element of his claim and, as such, the moving party must be awarded summary judgment.

## CONCLUSION

Accordingly, based on above and ECF No. 28, Defendant is entitled to summary judgment as a matter of law.

Respectfully submitted on May 11, 2022.

> JASON R. COODY
> United States Attorney
>
> */s/ Marie A. Moyle*
> **MARIE A. MOYLE**
> Assistant United States Attorney
> Florida Bar No. 1003498
> Email: marie.moyle@usdoj.gov
> 111 North Adams Street, 4th Floor
> Tallahassee, FL  32301
> Telephone:  85-942-8430
> Fax:  850-942-8466
> Counsel for Defendant

## LOCAL RULE 7.1(F) CERTIFICATION

I HEREBY CERTIFY that this Reply contains 3,200 words, per Microsoft Word's word count, which complies with the word limit requirements set forth in Local Rule 7.1(I).

## LOCAL RULE 5.1(F) CERTIFICATION

I HEREBY CERTIFY that on this 11th day of May, 2022, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF filing system and that a true copy has been served by electronic mail to Marie A. Mattox P.A., Plaintiff's Attorney.

/s/ *Marie A. Moyle*
**Marie A. Moyle**
Assistant U.S. Attorney
Counsel for Defendant